UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

       Plaintiff/Respondent,

   v.

PAUL CORRADO,

       Defendant/Movant.
_____/

CASE NO. 96-CR-80201-DT-09
          04-CV-72354-DT
JUDGE LAWRENCE P. ZATKOFF
MAGISTRATE JUDGE PAUL J. KOMIVES

**REPORT AND RECOMMENDATION**

I.    RECOMMENDATION: The Court should deny defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

II.    REPORT:

A.    *Procedural Background*

Defendant/movant Paul Corrado is a federal prisoner incarcerated that the Federal Correctional Institution in Milan, Michigan. In March 1996 defendant was charged in a multi-count, multi-defendant indictment in this Court. Specifically, defendant was charged with RICO conspiracy based on an agreement to participate in a pattern of racketeering activity, 18 U.S.C. §§ 1962(d), 1963; extortion under the Hobbs Act and conspiracy to violate the Hobbs Act, 18 U.S.C. §1951; and several counts of using or carrying a firearm in relation to a crime of violence, 18 U.S.C. § 924(c)(1). On April 29, 1998, defendant was convicted following a jury trial on thirteen counts. On November 6, 1998, the Court sentenced defendant to 97 months' imprisonment on the RICO conspiracy and extortion convictions, and to a mandatory consecutive term of 60 months'

imprisonment on the firearms convictions.[1]

Defendant appealed as of right to the Sixth Circuit, raising claims of improper voir dire, prosecutorial misconduct, partial jury, and failure to set forth factual findings in imposing sentence. The court vacated defendant's conviction and remanded for a hearing pursuant to *Remmer v. United States*, 347 U.S.227 (1954), to determine whether juror misconduct prejudiced defendant. *See United States v. Corrado*, 227 F.3d 528, 536-37 (6th Cir. 2000). On remand, the Court reinstated defendant's conviction and reimposed the original sentence. Defendant again appealed to the Sixth Circuit, which affirmed defendant's convictions and sentence. *See United States v. Corrado*, 304 F.3d 593 (6th Cir. 2002). The Supreme Court denied defendant's application for a writ of *certiorari* on March 3, 2003. *See United States v. Corrado*, 537 U.S. 1238 (2003).

On June 24, 2004, defendant filed this motion to vacate his sentence pursuant to 28 U.S.C. § 2255. In support of his motion, defendant contends that he was denied his Sixth Amendment right to an impartial jury, and that counsel was ineffective for failing to challenge defendant's conviction on the basis that his actions did not affect interstate commerce. Defendant also filed a memorandum in support of his motion and an amendment to his motion and memorandum on the same date. On July 15, 2004, defendant filed a motion to amend seeking to add a claim challenging his sentence under *Blakely v. Washington*. The government filed separate responses to the original § 2255 motion and the motion to amend on August 6, 2004. With respect to the claims raised in defendant's original motion, the government argues that: (1) the motion is untimely under the one year statute of limitations, 28 U.S.C. § 2255, para. 6; (2) defendant's impartial jury claim is barred because it

---

[1] Defendant's sentence included a downward departure under U.S.S.G. § 5K2.0 for his assistance in the arrest and indictment of an individual who attempted to tamper with the jury in defendant's case.

was already decided against him; and (3) defendant's ineffective assistance of counsel claim is without merit. With respect to the claim raised in defendant's motion to amend, the government argues that defendant's attempt to amend the § 2255 motion is a prohibited second motion, and that the right defendant seeks to invoke is not retroactively applicable to defendant's case. Defendant filed a combined reply on August 18, 2004.

On February 15, 2005, Judge O'Meara disqualified himself, and the case was reassigned to Judge Zatkoff. On December 5, 2005, the Court granted defendant's request to hold the case in abeyance pending the Supreme Court's decision in *Washington v. Recuenco*. The Supreme Court issued its decision in *Recuenco* on June 26, 2006. *See Washington v. Recuenco*, 548 U.S. 212 (2006). On October 3, 2007, the Court referred the matter to me for a Report and Recommendation. For the reasons that follow, the Court should conclude that defendant's amended motion was permissible as of right, and should therefore deny as moot his motion to amend. With respect to the claims asserted, the Court should conclude that none of the three claims asserted by defendant entitle him to § 2255 relief, and the Court should therefore deny the motion.

B.    *Amendment*

Defendant seeks leave to amend to add a claim under *Blakely*. The government contends that leave to amend would be futile because the proposed amendment constitutes a prohibited second motion and because the claim is without merit. However, because defendant was entitled to file his amendment as of right without obtaining leave of court, the Court should deny the motion as moot and should consider the *Blakely* claim.

Rule 15 of the Federal Rules of Civil Procedure, which is applicable to this § 2255 motion, *see Mayle v. Felix*, 545 U.S. 644 (2005); Rule 12, Rules Governing Section 2255 Proceedings for

the United States District Courts, 28 U.S.C. foll. § 2255, provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served[.]" FED. R. CIV. P. 15(a). Defendant's request for leave to amend was filed prior to the government's response, and thus is permitted as a matter of course.[2] Accordingly, the amended claim is properly considered a part of this matter, and the motion for leave to amend is moot.

C.     *Analysis*[3]

    1.     *Impartial Jury Claim*

In his first claim, defendant contends that he was denied his right to an impartial jury. The circumstances relating to this claim are fully detailed in the Sixth Circuit's opinions on defendant's direct appeal. Briefly stated, a man named Khalil Shabazz, who knew defendant, approached him claiming that he could deliver the verdicts of several jurors. Shabazz knew an alternate juror, and offered him $25,000 to vote for acquittal. After being approached by Shabazz, defendant informed the government, and assisted in the investigation and arrest of Shabazz. *See Corrado*, 304 F.3d at 599 & n.5; *Corrado*, 227 F.3d at 535-37. The government contends that this claim is barred by the

---

[2]Defendant's amendment, filed contemporaneously with his § 2255 motion, was not an amendment to the motion adding additional facts or claims. It was, rather, merely an amendment to his memorandum in support of his motion.

[3]The government contends that defendant's claims are barred by the one year statute of limitations set forth in 28 U.S.C. § 2255 para. 6. Defendant contends that, although not docketed in this Court until June 24, 2004, he actually filed his motion on February 26, 2004, by mailing it certified mail. The Court need not resolve the limitations issue. It is well established that the statute of limitations is not jurisdictional. *See Dunlap v. United States*, 250 F.3d 1001, 1004-05 (6th Cir. 2001). There *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted) ("[J]udicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated."). Therefore, the Court may deny the motion on the merits without reaching the statute of limitations issue. *Cf. Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted) ("[J]udicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated.").

law of the case doctrine because the claim was already decided against defendant. The Court should agree.

The law of the case doctrine, which is applicable in criminal proceedings, prohibits a lower court from redeciding issues already determined by a higher court in the same case. *See United States v. Moored*, 38 F.3d 1419, 1421-22 (6th Cir. 1994). Thus, issues which were addressed by the Sixth Circuit and decided against a defendant on direct appeal may not be relitigated in a § 2255 proceeding. *See DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996); *Gonzales v. United States*, 929 F. Supp. 252, 255 (E.D. Mich. 1996) (Gadola, J.) (citing *Stephen v. United States*, 496 F.2d 527, 528-29 (6th Cir. 1974)). Because these issues were addressed by the Sixth Circuit and decided against defendant, he is barred from relitigating them in this § 2255 proceeding.

Defendant contends that his claim is not barred by the law of the case doctrine because it is based on new evidence which was not available at the time the Sixth Circuit decided his appeal. Specifically, defendant now contends that Shabazz was working at the behest of the government in an attempt to entrap him into tampering with the jury. In support of this claim, defendant argues that he and Shabazz, although acquainted, were not close, and thus Shabazz would not have thought he could be a go-between for defendant unless he had been put up to it by the government. Further, defendant argues that Shabazz was under investigation by the government at the time of the attempted jury tampering, but was nevertheless able to penetrate the federal building without being arrested. Finally, relying on a number of news articles, defendant contends that two persons who worked for Shabazz in his criminal endeavors were not prosecuted for various crimes. However, defendant has pointed to no evidence which shows that the prosecution was involved in Shabazz's attempt to tamper with the jury. Contrary to defendant's argument, the evidence shows that Shabazz

was a friend of one of the alternate jurors. It is not a leap to assume that this relationship convinced Shabazz that he could deliver at least one juror for the defendants, and that he approached defendant in particular because he had some prior relationship with him. Further, there is nothing odd about the fact that Shabazz was able to enter a federal building despite being under investigation; the security personnel at the building may have been unaware of the investigation, or the law enforcement officials may simply have not been ready to arrest Shabazz at that stage of their investigation. Further, there is absolutely no evidence that the failure to prosecute Shabazz's associates was tied with defendant's trial. On the contrary, as defendant himself notes, one of the associates was not tried for bank robbery because he testified against his own codefendant in that trial.

In short, defendant has merely piled suppositions upon inferences to support what he views as the truth–namely, that the government committed gross misconduct by deliberately using Shabazz to attempt to entrap him during the trial and poison the jury against him. There is no actual evidence, however, to support this claim. "Because [defendant] fails to show that his allegations of a grand conspiracy to convict unjustly are other than frivolous or incredible, . . . he has not established his right to a federal evidentiary hearing." *Young v. Herring*, 938 F.2d 543, 559 (5th Cir. 1991). Likewise, defendant "is not entitled to discovery based on these far-fetched aspersions [where] he has proffered no factual allegations to support this tampering proposition." *Alley v. Maine*, No. 01-120-P-C, 2001 WL 420279, at *5 n.15 (D. Me. 2001). And because there is no evidence to support defendant's claim, defendant cannot overcome the law of the case bar to his impartial jury claim. Accordingly, the Court should conclude that defendant is not entitled to relief on this claim.

2.      *Ineffective Assistance of Counsel Claim*

Defendant next contends that his counsel was ineffective for failing to challenge the charges based on the Commerce Clause. Specifically, defendant contends that counsel should have challenged the nexus between his actions underlying the Hobbs Act charges and interstate commerce, based on the Sixth Circuit's decisions in *United States v. Wang*, 222 F.3d 234 (6th Cir. 2000) and *United States v. Turner*, 272 F.3d 380 (6th Cir. 2001). Before analyzing the adequacy of counsel's assistance, a brief description of the Hobbs Act and the interstate commerce requirement is appropriate.

The Hobbs Act provides, in relevant part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a). The Act further goes on to define "commerce" as interstate commerce. 18 U.S.C. § 1951(b)(3). As the Supreme Court has made clear, "there are two essential elements of a Hobbs Act crime: interference with commerce, and extortion [or robbery]." *Stirone v. United States*, 361 U.S. 212, 218 (1960). The language of the Act manifests Congress's purpose to punish all interference with interstate commerce to the full extent of its power to regulate interstate commerce under the Constitution. *See Stirone*, 361 U.S. at 215; *United States v. Culbert*, 435 U.S. 371, 373 (1978). Under the prevailing interpretation of the Hobbs Act and the Commerce Clause prior to 1995, the alleged extortion or robbery need have only a *de minimis* effect on interstate commerce. *See United States v. Peete*, 919 F.2d 1168, 1174-75 (6th Cir. 1990). Interstate commerce may be affected under the Hobbs Act in two ways: either directly or indirectly. *See United States v.*

*Mattson*, 671 F.2d 1020, 1023 (7th Cir. 1982). Direct interference occurs when the alleged extortion or robbery directly bears on interstate commerce or articles moving in interstate commerce, for example through the robbery of goods actively moving in interstate commerce. *See Pettiford*, 934 F. Supp. at 482 n.7. The indirect method involves what is known as the "depletion of assets" theory.

In *United States v. Lopez*, 514 U.S. 549 (1995), the Court explained that Congress may properly exercise its Commerce Clause authority in one of three ways:

> First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *i.e.*, those activities that *substantially affect* interstate commerce.

*Lopez*, 514 U.S. at 558-59 (citations omitted) (emphasis added). In light of *Lopez*, the courts, and particularly the Sixth Circuit, have developed a two-tiered analysis of whether a particular robbery or extortion which, in isolation has only a *de minimis* effect on commerce, may nonetheless substantially affect commerce. This analysis focuses on whether the robbery was of an individual or of a business. In *United States v. Smith*, 182 F.3d 452 (6th Cir. 1999), the Court reaffirmed the applicability of the *de minimis* effects test after *Lopez*. In *Smith*, the court joined all the other courts to have considered the issue in concluding that the *de minimis* standard for Hobbs Act jurisdiction survives *Lopez*. *See Smith*, 182 F.3d at 456. Adopting the reasoning of the Tenth Circuit, the court explained that "in *Lopez*, 'the Court recognized that if a statute regulates an activity which, through repetition, in aggregate has a substantial effect on interstate commerce, "the *de minimis* character of individual instances arising under the statute is of non consequence."'" *Smith*, 182 F.3d at 456 (quoting *United States v. Bolton*, 68 F.3d 396, 399 (10th Cir. 1995) (quoting *Lopez*, 514 U.S. at

558)). Subsequently, in *United States v. Wang*, 222 F.3d 234 (6th Cir. 2000), the court addressed the showing required where the victim is a private individual, rather than a business, and concluded that "the required showing is of a different order than in cases in which the victim is a business entity." *Id*. at 238. The court explained that, unlike in the case of a business, it cannot be assumed that the aggregate effect of robberies of private individuals will be to affect interstate commerce. *See id*. at 238-39. The court did note that "[t]his is not to say that criminal acts directed at private citizens will never create jurisdiction under the Hobbs Act. The federal courts have acknowledged, for example, that victimization of a large number of individuals, or victimization of a single individual for a very large sum, can have the potential directly to affect interstate commerce." *Id*. at 239. Nevertheless, the court "acticipate[d] . . . that the 'overwhelming majority' of Hobbs Act cases brought before the federal courts will continue to be ones in which the victims are businesses directly engaged in interstate commerce." *Id*. at 240. The Sixth Circuit reaffirmed this bifurcated approach to Hobbs Act jurisdiction in *United States v. Turner*, 272 F.3d 380, 385-86 (6th Cir. 2001).

To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. Defendant fails on both elements of the *Strickland* test.

First, counsel's failure to raise the issue does not satisfy the deficient performance prong of

*Strickland*. It is well established that counsel does not render constitutionally deficient performance by failing to anticipate a change in the law. *See Lott v. Coyle*, 261 F.3d 594, 609 (6th Cir. 2001); *Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999). "Counsel's failure to raise issues . . . that only later gain 'judicial recognition' does not constitute ineffectiveness." *Francois v. Wainwright*, 741 F.2d 1275, 1285 (11th Cir. 1984); *see also, Branch v. Cupp*, 736 F.2d 533, 537 (9th Cir. 1984); *United States v. Canniff*, 521 F.2d 565, 573 n.7 (2d Cir. 1975). Here, *Wang* was decided well after defendant's trial and the argument of his appeal. While it is true that the Fifth Circuit had previously reached the conclusion that the Sixth Circuit ultimately reached in *Wang*, *see United States v. Collins*, 40 F.3d 95 (5th Cir. 1994), counsel cannot be faulted for relying on existing, well-established governing law set forth in binding decisions of the Sixth Circuit.

Second, defendant is unable to satisfy the prejudice prong, because there is not a reasonable probability that the *Wang* exception applies in defendant's case. As noted above, the general rule under both the Hobbs Act and RICO is that a *de minimis* effect on interstate commerce is sufficient. *See United States v. Chance*, 306 F.3d 356, 373, 374 (6th Cir. 2002). *Wang* merely carves out a limited exception to this *de minimis* requirement for robbery or extortion directed at individuals, rather than businesses. *See id.* at 374 (citing *Wang*, 222 F.3d at 239-40). The Sixth Circuit has repeatedly held that the *Wang* exception to the *de minimis* effects test is limited to robberies or extortions of private individuals, and does not extend to robberies or extortions involving businesses. *See United States v. Davis*, 473 F.3d 680, 683 n.2 (6th Cir. 2007); *United States v. Orris*, 86 Fed. Appx. 82, 85-86 (6th Cir. 2004); *United States v. Dupree*, 323 F.3d 480, 485 (6th Cir. 2003). In defendant's case, the evidence showed that defendant and his codefendants extorted local bookmakers engaged in extensive gambling operations. As the Sixth Circuit explained in a

codefendant's appeal, these bookmaking operations employed from 5-30 bookmakers and grossed up to $120,000 per month. *See United States v. Zerilli*, 128 Fed. Appx. 473, 477 (6th Cir. 2005). Because such gambling operations themselves are engaged in activities which substantially affect interstate commerce, *see United States v. Wall*, 92 F.3d 1444, 1445-52 (6th Cir. 1995) (18 U.S.C. § 1955, which prohibits illegal gambling operations involving five or more persons that operate continuously for more than 30 days regulates activities that substantially affect interstate commerce), it follows that extortion of such an enterprise itself affects interstate commerce. For this reason, the Sixth Circuit rejected the identical claim as raised by defendant's codefendant. *See Zerilli*, 128 Fed. Appx. at 477. Thus, there is not a reasonable probability that, had counsel raised the *Wang* issue, the result of the proceeding would have been different. Accordingly, the Court should conclude that defendant is not entitled to relief on this claim.

    3.    *Blakely* Claim

Finally, in his amended claim, defendant asserts that his sentence violated his right to a jury trial on all elements of the offense, under a line of cases narrowing the sentencing discretion of judges. The line of cases begins with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in which the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. In *Blakely v. Washington*, 542 U.S. 296 (2004), the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines. The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed. The Court in *Blakely*

rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

In *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. Two separate majorities formed the Court's decision. Justice Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*. Noting that there was no difference of constitutional significance between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at 232-33, and rejecting the government's attempts to distinguish the two, *see id*. at 237-44, the merits majority concluded that the Guidelines violate the Sixth Amendment as interpreted in *Apprendi*. A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue. The remedial majority concluded that the appropriate remedy for the constitutional violation was not to strike the Guidelines in their entirety, but to excise two statutory provisions which make the Guidelines mandatory. *See id*. at 245. Thus, under *Booker* the Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing sentence, but the judge is not bound to follow the Guidelines.

Defendant contends that, because he was sentenced under the mandatory Guidelines system

in effect prior to *Booker*, his sentence is unconstitutional and he is thus entitled to resentencing under the post-*Booker* advisory Guidelines system. Regardless of the merits of defendant's claim, however, it is barred by the non-retroactivity principle established by the Court in *Teague v. Lane*, 489 U.S. 288 (1989). As the Court has recently explained:

> When a decision of this Court results in a "new rule," that rule applies to all criminal cases still pending on direct review. *Griffith v. Kentucky,* 479 U.S. 314, 328 (1987). As to convictions that are already final, however, the rule applies only in limited circumstances. New *substantive* rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, see *Bousley v. United States,* 523 U.S. 614, 620-621 (1998), as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish, see *Saffle v. Parks,* 494 U.S. 484, 494-495 (1990); *Teague v. Lane,* 489 U.S. 288, 311 (1989) (plurality opinion). Such rules apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal'" or faces a punishment that the law cannot impose upon him. *Bousley, supra,* at 620 (quoting *Davis v. United States,* 417 U.S. 333, 346 (1974)).
>    New rules of procedure, on the other hand, generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, we give retroactive effect to only a small set of "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle, supra,* at 495 (quoting *Teague,* 489 U.S., at 311). That a new procedural rule is "fundamental" in some abstract sense is not enough; the rule must be one "without which the likelihood of an accurate conviction is *seriously* diminished." *Id.,* at 313 (emphasis added). This class of rules is extremely narrow, and "it is unlikely that any . . . 'ha[s] yet to emerge.'" *Tyler v. Cain,* 533 U.S. 656, 667, n. 7 (2001) (quoting *Sawyer v. Smith,* 497 U.S. 227, 243 (1990)).

*Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (footnote and parallel citations omitted).

Here, defendant's conviction became final on March 3, 2003, when the Supreme Court denied his petition for a writ of *certiorari*, well before the Supreme Court's decisions in *Blakely* and *Booker*. Neither *Apprendi* nor *Blakely* provides a basis for relief on defendant's claim. At the time of petitioner's conviction, courts uniformly had held that the rule of *Apprendi* did not apply to the

Sentencing Guidelines. *See United States v. Hughes*, 369 F.3d 941, 947 (6th Cir. 2004); *United States v. Helton*, 349 F.3d 295, 299-300 (6th Cir. 2003); *United States v. Lawrence*, 308 F.3d 623, 634 (6th Cir. 2002); *cf. Harris v. United States*, 536 U.S. 545, 567-69 (2002). Similarly, *Blakely* explicitly declined to rule on the applicability of the Court's holding to the federal Guidelines, and the majority of post-*Blakely* courts addressing the question, including the Sixth Circuit, have concluded that *Blakely* did not affect the Sentencing Guidelines. *See United States v. Koch*, 383 F.3d 436, 439-43 (6th Cir. 2004) (en banc); *United States v. Hammond*, 381 F.3d 316, 345 (4th Cir. 2004) (en banc); *United States v. Mincey*, 380 F.3d 102, 105 (2d Cir. 2004). Thus, *Booker* alone governs defendant's claim. *See Humphress v. United States*, 398 F.3d 855, 857, 860 (6th Cir. 2005). Defendant cannot benefit from *Booker*, however, because *Booker* does not apply retroactively to cases on collateral review. *See Valentine v. United States*, 488 F.3d 325, 330 (6th Cir. 2007); *Humphress*, 398 F.3d at 860. Because *Blakely* does not affect the constitutionality of defendant's sentence, and because defendant's conviction became final prior to the Court's decisions in both *Blakely* and *Booker*, the Court should conclude that defendant is not entitled to relief on this claim.

D.  *Conclusion*

In view of the foregoing, the Court should conclude that defendant has not established his entitlement to relief under § 2255. Accordingly, the Court should deny defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

III.  NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver

of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives  
PAUL J. KOMIVES  
UNITED STATES MAGISTRATE JUDGE

Dated: 5/28/08

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on May 28, 2008.
>
> s/Eddrey Butts  
> Case Manager